# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

HERMAN PETERSEN, et al.,     )
                                )
        Plaintiffs,       )
                                )     CIVIL NO. 2004-0062
        v.            )
                                )
UNITED STEEL WORKERS OF     )
AMERICA, AFL-CIO-CLC and UNITED   )
STEEL WORKERS OF AMERICA,    )
LOCAL UNION NO. 8545,       )
                                )
        Defendants.      )
_____ )

## <u>MEMORANDUM OPINION</u>

FINCH, SENIOR JUDGE

      THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (Docket No. 193). Plaintiffs' oppose such motion. After careful consideration of the briefs submitted by the parties, the Court issues the following ruling.

## I.      BACKGROUND

      Plaintiffs are members of the bargaining unit represented by the United Steelworkers of America and USW Local 8545 (collectively "the Union"). In 2002, Plaintiffs were employed by Innovative Communications Company ("Innovative") on St. Croix, Virgin Islands. After their collective bargaining agreement expired on September 30, 2002, the Union began negotiations with Innovative for a new agreement. The parties were unable to reach an agreement because they could not agree on a number of issues, including wages and pension benefits.

      On October 1, 2002, the Union held a meeting with its St. Croix bargaining unit members. The Union allegedly assured its members that they could not lose their jobs by striking. <u>See</u> Amended Complaint at ¶ 53. After a long discussion, the bargaining unit members

voted to strike. <u>See</u> Decl. of Fredrick Joseph ("Joseph Decl."), ¶¶ 11-12. The bargaining unit members initiated a strike and did not report to work on October 2, 2002. <u>Id</u>. at ¶ 14. The Union and Innovative continued to negotiate during the strike. <u>Id</u>. at ¶¶ 15-16. On October 19, 2002, Innovative started running newspaper advertisements soliciting replacement workers. <u>Id</u>. at ¶ 17. The advertisements alarmed the bargaining unit members and, in response to the members' concerns, the Union held another meeting. <u>See</u> Pls.' Opp'n to Mot. for Summ. J. (Docket No. 200) at 2.

The Union was represented by sub-district director Fred Joseph and Terry Osborne at the meeting. <u>Id</u>. Plaintiff Cheverne Christopher asked the Union representatives whether the bargaining unit members would get their jobs back when the strike ended. <u>See</u> Dep. of Cheverne Christopher dated January 23, 2006 ("Christopher Dep."), 44:23-25; 45:1-24; 63:1-14. Joseph allegedly told Christopher, and the other bargaining unit members, not to worry about their jobs and explained that their replacements would be let go after the strike. <u>Id</u>. at 63:1-14. Joseph allegedly stated that the strike was an unfair labor practice strike and therefore, unlike an economic strike, Innovative could not hire permanent replacements. <u>See</u> Pls.' Opp'n to Mot. for Summ. J. at 6; Dep. of Gwendolyn Clarke dated January 24, 2006 ("Clarke Dep"), 67:7-9; 68:9-15; Dep. of Rovina Edwards dated January 24, 2006 ("Edwards Dep."), 43:4-24; Dep. of Ida Cruz dated January 24, 2006 ("Cruz Dep."), 34:1-9.

On November 19, 2002, the Union and Innovative met to resolve the strike. <u>See</u> Pls.' Opp'n to Mot. for Summ. J. at 3. The Union demanded that Innovative take back all striking employees. Innovative refused. <u>See</u> Decl. of Homer Wilson ("Wilson Decl."), ¶¶ 25-26. On November 25, 2002, the Union leadership met with its bargaining unit members, who voted to end the strike. <u>See</u> Joseph Decl., ¶¶ 9-13; 26-27. The Union told the members that Innovative

had hired replacements for some of the strikers and eliminated the jobs of some others.[1]  The Union allegedly assured the bargaining unit members that it was taking legal action to force Innovative to rehire them.  See Dep. of Fred Joseph dated September 12, 2005 ("Joseph Dep."), 39:14-25; 40:1-3; Dep. of Julian Hall dated November 15, 2005 ("Hall Dep."), 56:14-22; Dep. of Germaine Miller dated January 25, 2006 ("Miller Dep."), 45:8-15.

In February 2004, the Union held a meeting with Plaintiffs and other bargaining unit members whose jobs had either been eliminated or taken by permanent replacements. The Union told these members that it had lost the arbitration, that the members would not get their jobs back, and that there was nothing else the Union could do.  See Joseph Dep., 52:13-25; 53:1-18; Cruz Dep., 56:4-23; Dep. of Angela Santos dated January 26, 2006 ("Santos Dep."), 37:17-22.

On April 29, 2004, Plaintiffs filed their Complaint against the Union for breach of the duty of fair representation.  Plaintiffs allege that the Union should have negotiated a better agreement and that the Union falsely represented to them that they could not "lose their jobs by striking."  See Amended Compl. ¶¶ 59-60.  Plaintiffs' Complaint states that the District Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the case arises under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159.  Id. at ¶ 2. Defendants filed their Motion for Summary Judgment on December 8, 2004, arguing that Plaintiffs' Complaint must be dismissed because (1) Plaintiffs' claims are pre-empted by the NLRA, (2) Plaintiffs' duty of fair representation claim is barred by the statute of limitations, and (3) Defendants' alleged statements to Plaintiffs do not constitute a breach of the duty of fair representation.  See Defs.' Mem. in Supp. of Mot. for Summ. J. (Docket No. 195) at 6-7.

---

[1] Twenty-four Plaintiffs were notified at the end of the strike that Innovative had replaced them during the strike.  In addition to replacing striking employees, Innovative also implemented a reduction in force which decreased the number of open bargaining unit positions. Fifteen Plaintiffs fall into this category.

## II.    STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Id. at 247-48.  The moving party has the burden of proving that there is no material issue of fact in dispute and, once the moving party has carried its burden, the nonmoving party must produce sufficient evidence that will reasonably support a jury verdict in its favor and not just "some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  In analyzing this motion for summary judgment, this Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## III.    PREEMPTION BY THE NLRA

Plaintiffs claim that Defendants violated their duty of fair representation.  Plaintiffs also contend that the case arises under the NLRA. See Amended Complaint at ¶ 2.  Defendants' argue that the claims asserted by Plaintiffs are within the primary jurisdiction of the National Labor Relations Board ("NLRB") and any private right of action by Plaintiffs is pre-empted.  See Defs.' Mem. in Supp. of Mot. for Summ. J. at 7.

As a general rule, neither state nor federal courts have jurisdiction over suits directly involving activity protected by the NLRA.[2]  <u>See</u> <u>San Diego Building Trades Council v. Garmin</u>, 359 U.S. 236, 245 (1959).  The reasons for this include the need for uniformity of decisions and deference to the expertise of the NLRB.  However, this general rule of preemption is subject to exception. <u>See</u> <u>Vaca v. Sipes</u>, 386 U.S. 171, 177 (1967).

As an exclusive bargaining representative of all employees in a bargaining unit, a union has a "duty fairly to represent all of those employees" in the negotiation and enforcement of a collective bargaining agreement.  <u>Id.</u> at 177.  A labor organization's duty to represent all members fairly arises from its status under § 9(a) of the NLRA.  <u>See</u> <u>Marquez</u>, 525 U.S. at 44; <u>Ford Motor Co. v. Hoffman</u>, 345 U.S. 330, 337 (1953).  The duty of fair representation exists because the NLRA deprives "individuals in the [collective bargaining] unit of the ability to bargain individually or to select a minority union as their representative" and therefore it is necessary to ensure that individuals are not "deprived of all effective means of protecting their own interests."  <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 164-65 (1983); <u>see also</u> <u>Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6</u>, 493 U.S. 67, 86-87 (1989) (duty exists because "the national labor policy vested unions with power to order the relations of employees with their employer") (<u>quoting</u> <u>N.L.R.B. v. Allis-Chalmers Mfg. Co.</u>, 388 U.S. 175, 181 (1967)); <u>Masy v. New Jersey Transit Rail Operations, Inc.</u>, 790 F.2d 322, 327-28 (3d Cir. 1986) (duty is a "counterbalance to the union's position as exclusive bargaining representative").

The duty of fair representation has been described by the Supreme Court as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the

---

[2] The NLRB has its own procedures for investigation, complaint and notice, hearing and decision. <u>See</u> <u>Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 766,</u> 346 U.S. 485, 490 (1953).

provisions of federal labor law." Vaca, 386 U.S. at 182; see Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993). This duty is enforceable by courts, even if the alleged breach arguably could be considered an unfair labor practice under NLRA. See Communications Workers of America v. Beck, 487 U.S. 735, 743 (1988); Marquez v. Screen Actors Guild, 124 F.3d 1034, 1037 (9th Cir. 1997). Although federal district courts cannot resolve pure statutory claims under the NLRA, they can resolve statutory issues to the extent that resolving these issues is necessary for a decision on the plaintiff's duty of fair representation claim.[3] Marquez, 525 U.S. at 50; see Connell Constr. Co. v. Plumbers, 421 U.S. 616, 626 (1975).

In Beck, the Supreme Court noted that "employees . . . may not circumvent the primary jurisdiction of the NLRB simply by casting statutory claims as violations of the union's duty of fair representation." Beck, 487 U.S. at 743. When a plaintiff's only claim is that the union violated the NLRA, the plaintiff cannot avoid the jurisdiction of the NLRB by characterizing this alleged statutory violation as a breach of the duty of fair representation. Id.; see also Marquez v. Screen Actors Guild, 525 U.S. 33, 50 (1998) ("The ritualistic incantation of the phrase 'duty of fair representation' is insufficient to invoke the primary jurisdiction of federal courts"). To invoke federal jurisdiction when the claim is based in part on a violation of the NLRA, there must be something more than just a claim that the union violated the statute. Id. The plaintiff must adduce facts suggesting that the union's violation of the statute was arbitrary, discriminatory, or in bad faith. McKelvin v. E.J. Brach Corp., 124 F.3d 864, 867 (7th Cir. 1997); see Vaca, 386 U.S. at 190.

---

[3] The power of federal courts to resolve statutory issues under the NLRA when they arise as collateral matters in a duty of fair representation suit does not open the door for federal courts to resolve all statutory claims in the first instance. See Marquez, 525 U.S. at 50. Federal courts can only resolve claims under § 7 and § 8 of the NLRA that are collateral to a duty of fair representation claim. Id.

Although Plaintiffs state in their Complaint that the case arises under the NLRA, their only claim against Defendants is for a breach of the duty of fair representation. <u>See</u> Amended Complaint at ¶ 2. Plaintiffs testified that, throughout the strike, the Union leadership knowingly misrepresented to its members that they could not lose their jobs by striking. <u>See</u> Amended Complaint at ¶ 53. Because Plaintiffs' claim for breach of the duty of fair representation is based on these alleged false statements made in bad faith, the Court finds that Plaintiffs' duty of fair representation claim is not preempted by the NLRA. Consequently, this Court has subject matter jurisdiction to hear Plaintiffs' case.[4]

## IV. STATUTE OF LIMITATIONS

Statutes of limitations ensure that defendants are "protected against the prejudice of having to defend against stale claims, as well as the notion that, at some point, claims should be laid to rest so that security and stability can be restored to human affairs." <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010, 1014 (3rd Cir. 1995). Defendants argue that Plaintiffs' claim for breach of the duty of fair representation is barred by the statute of limitations. <u>See</u> Defs.' Mem. in Supp. of Mot. for Summ. J. at 7-8. The limitations period for a breach of fair representation claim is six months.[5] 29 U.S.C. § 160 (b); <u>see</u> <u>Delcostello</u>, 462 U.S. at 169; <u>Podobnik v. United States Postal Service</u>, 409 F.3d 584 (3rd Cir. 2005). The six-month period begins to run "when the claimants discover, or in the exercise of reasonable diligence should discover, the acts that

---

[4] Jurisdiction over a claim that a union has breached its duty of fair representation is based on 28 U.S.C. § 1337(a) (1988), covering "any civil action or proceeding arising under any Act of Congress regulating commerce." <u>Breininger</u>, 493 U.S. at 83.

[5] The NLRA states that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made." 29 U.S.C. § 160 (b). The NLRA six month statute of limitations standard has been held to apply instead of applicable state or territorial law when there is a hybrid action by an employee against both the employer and the union for unfair labor practices under § 301 of the Labor Management Relations Act , 29 U.S.C. § 185 and breach of the union's duty of fair representation. <u>Delcostello v. Int'l Bhd. Teamsters, et al.</u>, 462 U.S. 151, 169 (1983).

form the basis of their duty of fair representation claim." Trial v. Atchison, Topeka & Santa Fe Railway Co., 896 F.2d 120, 124 (5th Cir. 1990); see Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir.1986); see also Vadino v. A. Valey Engineers, 903 F.2d 253, 260 (3d Cir. 1990) (holding that limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation").

In this case, the work stoppage ended on November 25, 2002. On that date, the bargaining unit members that had positions open and available to them began to return to work. Plaintiffs knew no later than November 26, 2002, that they would not return to work immediately. See Podobnik, 409 F.3d 584. Thus, each Plaintiff knew or should have known as of November 26, 2002, that the Union had misinformed the Plaintiffs that they would return to work at the conclusion of the strike. This action was not filed by the Plaintiff until April 2004, more than six months after each Plaintiff knew or should have known of the alleged breach of duty. However, Plaintiffs argue that the six-month limitations period was tolled while the union continued to actively represent the employees.

In Childs v. Pennsylvania Fed'n Bhd. of Maintenance of Way Employees, 831 F.2d 429, 437-39 (3d Cir. 1987), the Third Circuit Court of Appeals held that a claim for breach of the duty of fair representation does not accrue while the union continues actively to represent the employee and proffers "rays of hope" to the employees that their cause will ultimately prevail. There, the employee-plaintiff was aware of certain facts that indicated a duty of fair representation breach a full two years before his claim was finally arbitrated against him. Nevertheless, the Third Circuit held that the duty of fair representation cause of action accrued on the date the arbitration board decided the case. Id. at 436; see also Vadino v. A. Valey

Engineers, 903 F.2d 253, 261 (3d Cir. 1990)[6] (holding that "the relevant statute of limitations question . . . is not when [the employee] knew, or should have known, that the employer breached the contract but also when he knew, or should have known, that further appeals to the Union would be futile").

A Union is equitably estopped from asserting the statute of limitations until efforts to resolve the situation are either completed or broken off. See Miklavic v. US Air Inc., 21 F.3d 551, 556-57 (3d Cir. 1994). This rule is rooted in two principles. The first, that a party should not be permitted to profit from its own wrong, is well-established in our jurisprudence. If the Union intentionally strung the bargaining unit members along until the limitations period expired, it would be manifestly unjust to hold that Plaintiffs' claim is now time-barred. Id. The second is that the policy of labor laws in general is to resolve disputes without litigation whenever possible. Id.; see Vadino, 903 F.2d at 261.

After Plaintiffs lost their jobs, the Union continued to represent them in arbitration against Innovative. In this case, the Union offered "rays of hope" to Plaintiffs by allegedly telling them that it would ultimately prevail and get their jobs back. See Joseph Dep., 39:4-24; 40:1-15; Hall Dep., 56:11-22; Miller Dep., 45:6-18. These "rays of hope" were not extinguished until February 2004, when the Union leadership told the plaintiffs that it lost the arbitration and nothing more could be done. See Joseph Dep., 52:13-25; 53:1-18; Cruz Dep., 56:4-23; Santos Dep., 37:17-22. Thus, the limitations period was tolled until February 2004. The Complaint was filed on April 24, 2004, well within the six-month statute of limitations period. See Miklavic v.

---

[6] In Vadino, the court assumed, without deciding, that employer conduct which purported to amicably resolve a dispute but which instead lulled the employee into a false sense of security until after the limitations period expired could be grounds for equitable tolling. Id. at 263-264. On the facts before the Vadino court, it was not necessary to reach the issue; there was no actual reliance on the employer's statements, nor would reliance have been reasonable in any event. Id.

<u>US Air Inc.</u>, 21 F.3d 551, 556-57 (3d Cir. 1994) (holding that statute of limitations period was tolled while union continued to represent employees and provided 'rays of hope' to employees that their cause would ultimately prevail).

Although the claims of those Plaintiffs named in the initial Complaint are not barred by the statute of limitations, five additional Plaintiffs were added to this action on December 15, 2005.  The Complaint was amended to add Plaintiffs Angel Parilla, Aisha Williams, Giselle Lopez, Mary LeTang, and Eugenio Acosta.  Defendants argue that the claims of these five Plaintiffs are time barred because they were added beyond the six-month statute of limitations period.  The question before the Court is whether these Plaintiffs' claims relate back to the original filing date of the Complaint.

The relation-back rule requires plaintiffs to show that the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights.  <u>See</u> <u>County of Allegheny</u>, 60 F.3d at 1014.  Federal Rule of Civil Procedure 15(c)[7] permits amendment of a pleading to relate back to the date of the original pleading if certain requirements are met.  Where the effort is to add new parties, courts apply subparagraph (C), and inquire whether the defendants (i) received such notice that they will not be prejudiced in maintaining a defense on the merits, and

---

[7]  Federal Rule of Civil Procedure 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back, (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original pleading, or (C) the amendment changes the party or the naming of the party against whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and …the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced by defending on the merits, and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

(ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought with the original claims.[8]

The emphasis of the first prong of this inquiry is on notice. "[T]he 'prejudice' to which the Rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." Curry v. Johns-Manville Corp., 93 F.R.D. 623, 626 (E.D. Pa. 1982). Because the five additional Plaintiffs allege injury by the same conduct described in the original pleading, the evidence relevant to a defense against these new claims would be the same as the evidence relevant to a defense against the original claims. Therefore, the added Plaintiffs satisfy the first prong of Rule 15(c).

On the second prong, however, the new complaint fails. Defendants did not know, nor should they have known before the expiration of the limitations period that, but for a mistake, they would have been sued directly by these plaintiffs. The Court of Appeals for the District of Columbia Circuit has noted that without some limit relation back:

> would allow the tardy plaintiffs to benefit from the diligence
> of the other victims and, more importantly, could cause defendants'
> liability to increase geometrically and their defensive strategy to
> become far more complex long after the statute of limitations had
> run. Even if, as here, there were no showing of specific prejudice
> in the sense of lost or destroyed evidence, defendants would still
> be deprived of their interest in repose. At some point, defendants
> should have notice of who their adversaries are.

Leachman v. Beech Aircraft Corp., 694 F.2d 1301, 1309 (D.C. Cir. 1982). Plaintiffs who were added in December of 2005 had ample time in which to file their claims. They failed to add their

---

[8] The Committee Note to the 1966 Amendment to the rule states that "the relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier [than that of amendments changing defendants]. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs."

names to the Complaint until after expiration of the statute of limitations and they have not demonstrated that this failure was due to mistake.[9] "Although the relation-back rule ameliorates the effect of statutes of limitations, it does not save the claims of complainants who have sat on their rights." County of Allegheny, 60 F.3d at 1014. The Court finds the relation-back rule does not save the claims of these five Plaintiffs and their dismissal from this case is appropriate.[10]

## I.      DUTY OF FAIR REPRESENTATION

Defendants argue that (1) the alleged statements made by Union representatives do not constitute a breach of the duty of fair representation, and (2) there is no evidence that Plaintiffs' relied on the alleged misrepresentations to their detriment. The Court will address each of these arguments in turn. See Defs.' Mem. in Supp. of Mot. for Summ. J. at 8-16.

### 1.      **Breach of the Duty of Fair Representation**

The duty of fair representation arises from the status of the Union as the collective bargaining representative of the bargaining unit members. When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly. See Vaca, 386 U.S. at 177; Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953). The duty of fair representation has been likened to a

---

[9] This is not a case where plaintiffs merely sought to substitute a real party in interest. See Staren v. American Nat. Bank & Trust Co., 529 F.2d 1257, 1263 (7th Cir.1976) ("The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based."); 6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1501 (1990) (citing cases permitting amendments that substitute new plaintiffs to relate back if the added plaintiffs are real parties in interest).

[10] These Plaintiffs are Eugenio Acosta, Edwin Claxton, Mary LeTang, Giselle Lopez, and Aisha Williams.

fiduciary duty owed by the union to all employees "to represent them adequately as well as honestly and in good faith." Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 75 (1991). The duty applies to "challenges leveled not only at a union's contract administration and enforcement efforts but at its negotiation activities as well." Beck, 487 U.S. at 743 (internal citation omitted).

The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca, 386 U.S. at 177. In other words, a union breaches the duty of fair representation when its conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." Id. at 190; see also Air Line Pilots v. O'Neill, 499 U.S. 65, 67 (1991) (reaffirming this standard). A plaintiff must prove a bad faith motive to sustain a claim for breach of the duty of fair representation. Findley v. Jones Motor Freight, 639 F.2d 953, 958-59 (3rd Cir. 1981); see also Medlin v. Boeing Vertol Co., 620 F.2d 957, 967 (3rd Cir. 1980) ("[I]t is essential that plaintiffs allege a bad faith motive" for a duty of fair representation claim). An improper intent, purpose, or motive is required to prove bad faith. Findley, 639 F.2d at 960-61. Negligence, poor judgment, or bad results are insufficient to sustain a claim for breach of the duty of fair representation. Id. at 958-59; see Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3rd Cir. 1970). It is only when the actions of the Union are so far beyond a wide range of reasonableness as to be irrational that a plaintiff may maintain an action for breach of the duty of fair representation. Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65 (1991).

Plaintiffs argue that, throughout the strike, the Union leadership knowingly misrepresented to its members that they could not lose their jobs by striking. See Amended Complaint at ¶ 53. The Union representatives, including Fred Joseph, allegedly told the

bargaining unit members not to worry about their jobs because Innovative could not hire permanent replacement workers and the replacements would be let go after the strike.  <u>See</u> Christopher Dep., 44:23-25; 45:1-24; 63:1-14.  Joseph allegedly represented to Plaintiffs that the strike was an unfair labor practice strike and therefore, unlike an economic strike, Innovative could not hire permanent replacements.  <u>Id</u>. at 63:1-14; <u>see</u> Pls.' Opp'n to Mot. for Summ. J. at 6; Clarke Dep., 67:7-9; 68:9-15; Edwards Dep., 43:4-24; Cruz Dep., 34:1-9.  Plaintiffs claim that the Union's statements were not the product of a mistake but rather deliberate falsehoods designed to persuade the strikers not to cross the picket line. <u>See</u> Pls.' Opp'n to Mot. for Summ. J. at 6.

In support of their Motion for Summary Judgment, Defendants rely in particular on the Seventh Circuit's decision in <u>Swatts v. United Steelworkers</u>, 808 F.2d 1221, 1225 (7th Cir. 1986), a case where workers complained that union officials failed to warn them they could be fired for striking and misrepresented the company's right to hire permanent replacements.  In affirming summary judgment for the union, the Seventh Circuit observed that the employees improperly sought to impose liability on the union for withholding information that was readily accessible to them, or to any member of the general public – "that strikers sometimes lose their jobs because employers find replacements to fill their slots."  <u>Id</u>. at 1224-1225.  The court suggested that a union should be held liable only if it either made an affirmative misrepresentation or failed to make known information within its exclusive control.

In the strike setting, however, the <u>Swatts</u> court expressed a reluctance to find a fair representation violation even when there has been an affirmative misstatement:

> Even assuming that some misstatement might have occurred, every inaccuracy should not form the basis of a federal suit.  A strike often presents unique pressures. The atmosphere may be tense, charged and confused. The situation is intensely adversary. Decisions and statements are sometimes made in haste, under

pressure and in the belief that the other side is disseminating manipulated or distorted information to which a response is required. Union leaders, in exhorting the membership, may voice opinions that later prove inaccurate, or make claims that turn out to be hyperbole. So long as such statements are not intentionally misleading and are not of a nature to be reasonably relied upon by the membership -- rather than discounted as partisan exhortation delivered under conditions of conflict -- they may not rise to the level of invidious actions barred by the duty of fair representation. To conclude otherwise would have a chilling effect on the right to strike itself by instilling a fear of unjustifiable lawsuits. We emphasize that we do not condone fabrications designed to mislead the membership. But there must be a demanding standard for measuring such violations.

Id. at 1125; see Bautista v. Pan American World Airlines, 828 F.2d 546, 551 (9th Cir. 1987).

The Court understands that courts must be wary of finding a fair representation violation based simply on ill-fated advice from union officials, particularly when the issue is whether and how to conduct a strike. See Alicea v. Suffield Poultry, Inc., 902 F.2d 125, 132 (1st Cir. 1990). A union must be allowed a "wide range of reasonableness" in serving the unit it represents and the "complete satisfaction of all who are represented is hardly to be expected." Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953). The Court agrees with the holding in Swatts that union officials should not be strictly required to warn members of all of the potential dangers of striking. However, the facts of this case are significantly different from Swatts. The Court questions whether the Seventh Circuit's caveats are relevant in the context of this case where Plaintiffs claim an affirmative misrepresentation made in bad faith.

In Swatts, there was insufficient evidence showing that the union told the strikers that they could not be replaced.[11] Id. at 1223. The Swatts court noted that "two union members complained of misstatements, but their testimony was not supported by 45 fellow union members

_____

[11] In Swatts, only two affidavits claimed active misrepresentation with respect to whether the company could hire permanent replacements. Id. at 1223. On the other hand, forty-five affidavits stated that the union had never stated that the company could not hire permanent replacements. Id.

who attested that no active misrepresentation occurred." Id. at 1225. In this case, by contrast, there is substantial evidence that the Union represented to the members that they could not lose their jobs. See Christopher Dep., 44:23-25; 45:1-24; 63:1-14; Clarke Dep. 67:7-9; 68:9-15; Edwards Dep., 43:4-24; Cruz Dep., 34:1-9.

Plaintiffs do not simply allege a failure to warn about the consequences of striking. Rather, Plaintiffs claim that Defendants intentionally made affirmative misrepresentations. The Union's representative Fred Joseph allegedly assured the strikers that they could not be replaced and would regain their positions when the strike ended. See Christopher Dep., 44:23-25; 45:1-24; 63:1-14; Clarke Dep. 67:7-9; 68:9-15; Edwards Dep., 43:4-24; Cruz Dep., 34:1-9. Despite his statements to bargaining unit members, Joseph allegedly knew that the strikers could be permanently replaced. See Pls.' Opp'n to Mot. for Summ. J. at 7; Joseph Dep., 32:1-16.

A union's "affirmative misrepresentations" to its members may amount to bad faith or arbitrary conduct. See Anderson v. United Paperworkers International Union, 641 F.2d 574 (8th Cir. 1981). "Intentionally misleading statements by union officials designed to persuade members to join in collective action, such as a strike or ratification of a newly negotiated agreement, can supply the bad faith necessary to a [NLRA] violation." Bautista v. Pan American World Airlines, Inc.., 828 F.2d 546, 550 (9th Cir. 1987); see also Chavez v. United Food & Commercial Workers Intern. Union, AFL-CIO-CLC, 779 F.2d 1353, 1355-56 (8th Cir. 1985) (affirming jury award against union where union falsely represented that members could not be replaced by company).

In Chavez, union members alleged that they were induced to strike by misrepresentations that they would be unfair labor practice strikers rather than economic strikers and, thus, could not be permanently replaced. See Chavez, 779 F.2d at 1355. During the strike, the company hired

permanent replacement workers and the union members lost their jobs. The jury found in favor

of the members of the bargaining unit. The Eighth Circuit affirmed with respect to those

members who relied on the false statements by either striking or not crossing the picket line. Id.

at 1358.

The Court finds that there is a genuine issue of material fact as to whether Defendants'

alleged misrepresentations constitute a bad faith abandonment of their obligation to protect the

interests of all those whom the Union represents. Viewing the record in the light most favorable

to Plaintiffs, a reasonable jury could infer that the Union knew that its alleged statement

guaranteeing Plaintiffs' job security was false and a reasonable jury could find that the Union

made these statements in bad faith, for the purpose of keeping the members on strike and from

crossing the picket line.

## 2. **Reliance and Injury**

Defendants argue that there is no evidence that Plaintiffs were harmed by relying on the

Union's alleged statements that they could not be replaced. To prove a breach of duty of fair

representation based upon misrepresentations, a plaintiff must show a direct causal nexus

between the statements that are alleged to have breached the duty and the harm which the

individual suffered. Deboles v. Trans World Airlines, 552 F.2d 1005, 1018-1019 (3d Cir. 1977);

see also Findley v. Jones Motor Freight, 639 F.2d 953, 959 (3rd Cir. 1981) (holding that grievant

must show that breach of duty caused damages); Acri v. Int'l Association of Machinist and Aero

Spaceworkers, 781 F.2d 1393, 1397 (9th Cir. 1986) (holding that union members must establish

causal connection between misrepresentations by union and injury). In order to prove causation

based upon misrepresentations that resulted in a strike vote or decision to remain on strike, a

plaintiff must demonstrate that the vote to go on strike or decision to continue striking would

have been different had the alleged misrepresentations not been made.  Deboles, 552 F.2d at 1018-1019.

To prove a breach, each Plaintiff in this case must individually establish that (1) the Union communicated inaccurate information to them in bad faith, (2) they relied on such information when they voted to strike or when they decided not to cross the picket line, (3) they would not have voted to strike or would have crossed the picket line if not for the misrepresentation,[12] and (4) they sustained injuries from striking.  See Chavez, 779 F.2d at 1358; Deboles, 552 F.2d at 1018;  see also Voilas v. General Motors Corp., 1996 U.S. Dist. LEXIS 21618, *25-*26 (D.N.J. February 22, 1996) ("[E]each and every plaintiff in a duty of fair representation case must establish the causal link as a critical element of establishing liability").  Each Plaintiff testified that the Union misrepresented to them that they could not be replaced and they would be able to return to work after the strike.[13]  Absent the Union's alleged misrepresentations, each Plaintiff claims that they would have crossed the picket line and

---

[12] In order to prove causation based upon misrepresentations that resulted in a strike vote or decision to remain on strike, a plaintiff must demonstrate that the vote to go on strike or decision to continue striking would have been different had the alleged misrepresentations not been made.  Deboles, 552 F.2d at 1018-1019.

[13] See Dep. of Bernice Allick, 72, 114; Dep. of Eujenio Acosta, 20; Dep. of  Aisha Williams, 40, 73; Dep. of Andres St. Kitts Depo., 54; Dep. of Manuel Reyes, 29, 30; Dep. of Arnold Simmonds, 48; Dep. of Angela Santos, 36, 37; Dep. of Antoinette Rampersad, 27, 28, 35; Dep. of Hortensia Pugh 28, 62; Dep. of Angel Parrilla, 30, 31; Dep. of Ruben Navarro, 35; Dep. of Nilda Cruz, 49; Dep. of Jean Murrain, 39; Dep. of Consuelo Mercado, 45, 46; Dep. of Mary Letang, 43, 50; Dep. of Edilia Lawrence, 34; Dep. of Yolande Brown, 27, 31; Dep. of Ida Cruz, 29; Dep. of Hilarie Henry, 32, 40; Dep. of Julian Hall, 29, 30; Dep. of Eunice George, 35; Dep. of Jose Felix, 41, 42; Dep. of Rovina Edwards, 28, 30; Dep. of Claudia Creese, 90; Dep. of Gwendolyn Clarke, 61, 62; Dep. of Rawle Caines, 42; Dep. of Ricky Brown, 30, 62, 63; Dep. of Hernan Petersen, 23, 38, 40, 56.  These Plaintiffs claim that the Union made the alleged misrepresentations shortly after Innovative began advertising for replacement workers.

returned to work in late October, 2002, when Innovative began placing newspaper advertisements soliciting replacement workers.[14]

Although those Plaintiffs whose positions were permanently replaced suffered cognizable injury by deciding not crossing the picket line, fifteen Plaintiffs did not return to employment at the end of the strike because Innovative unilaterally abolished their positions.[15] At the time the strike began, there were approximately 309 bargaining unit positions. At the November 19, 2002 meeting, the Union was informed by Innovative that it intended to reduce the number of bargaining unit positions from approximately 309 employees to 235 employees. The Unions objected and attempted to persuade Innovative not to eliminate these positions, but Innovative refused. See Wilson Decl., ¶¶ 12, 13.

The fifteen positions were eliminated by Innovative based upon a business decision regarding the staffing levels it needed to conduct its business.[16] Plaintiffs do not offer any evidence tending to show a link between the alleged statements made by the Union on October 1,

---

[14] See Declaration of Herman Petersen ¶ 3- 4; Declaration of Jaslyn Scatliffe ¶3-4; Declaration of Bernice Allick ¶3-4; Declaration of Eujenio Acosta ¶3-4; Declaration of Aisha Williams ¶3-4; Declaration of Andres St. Kitts ¶3-4; Declaration of Manuel Reyes ¶3-4; Declaration of Antoinette Rampersad ¶3-4; Declaration of Angel Parrilla ¶3-4; Declaration of Ruben Navarro ¶3-4; Declaration of Nilda Cruz ¶3-4; Declaration of Jean Murrain ¶3-4; Declaration of Consuelo Mercado ¶3-4; Declaration of Mary Letang ¶3-4; Declaration of Edilia Lawrence ¶3-4; Declaration of Louis Brown ¶3-4; Declaration of Ida Cruz ¶3-4; Declaration of Hilary Henry ¶3-4; Declaration of Julian Hall ¶3-4; Declaration of Eunice George ¶3-4; Declaration of Jose Felix ¶3-4; Declaration of Rovina Edwards ¶3-4; Declaration of Claudia Creese ¶3-4; Declaration of Gwendolyn Clarke ¶3-4; Declaration of Rawle Caines ¶3-4; Declaration of Yolande Browne ¶3-4; Declaration of Edward Schuster ¶3-4; Declaration of Angela Santos ¶3-4; Declaration of Edwin Claxton ¶3-4; Declaration of Gisselle Lopez ¶3-4; Declaration of Harvel Samuel ¶3-4; Declaration of Ricky Brown ¶3-4; Declaration of Germaine Miller ¶3-4; Declaration of Marta Nicholas ¶3-4; Declaration of Justino Ramos ¶3-4.

[15] Those plaintiffs are Eugenio Acosta, Louis E. Brown, Rawle Caines, Nilda Cruz, Jose Felix, Hilarie Henry, Edilia Lawrence, Angel Parilla, Herman Peterson, Justino S. Ramos, Harvel Samuel, Angela Santos, Jaslyn Scatliffe, Arnold Simmonds, and Andres St. Kitts.

[16] Plaintiffs concede that Innovative, and not the Union, made the decision to eliminate the positions of fifteen of the Plaintiffs. See Pls.' Opp'n to Mot. for Summ. J. at 8.

2002 and the decision by Innovative to change the staffing levels in November 2002. Any injury these fifteen individuals suffered was proximately caused by Innovative's decision to reduce the number of bargaining unit positions, not by statements made by the Union. See Deboles, 552 F.2d at 1018-1019 (holding that plaintiff must show proximate causation between misrepresentation and injury).

The fact that these individuals may have chosen to cross the picket line at some point does not demonstrate causation. The Union did not eliminate the positions and Plaintiffs fail to provide any evidence to suggest that the Union's alleged statements contributed in any way to the elimination of the positions. Without some evidence tending to show that the alleged misconduct caused the damage suffered by these fifteen Plaintiffs, their claims must be dismissed. See Findley v. Jones Motor Freight, 639 F.2d 953, 959 (3rd Cir. 1981).

Plaintiffs argue that "had the plaintiffs whose positions were eliminated crossed the picket line, they would have been able to take positions that were ultimately filled by replacement workers." See Pls.' Opp'n to Mot. for Summ. J. at 8. However, the Court finds that this argument is misplaced. If these fifteen Plaintiffs had crossed the picket line and returned to work prior to the announcement of the reduction in force, they would have returned to the positions they held before the strike began. Those positions were subsequently eliminated by the company. Moreover, the Plaintiffs do not offer any facts or evidence to the Court demonstrating that these Plaintiffs were qualified to perform in any position other than the position that was eliminated. Accordingly, the Court finds that summary judgment in favor of Defendants is appropriate as to these fifteen Plaintiffs because they are unable to provide any evidence tending to show that Defendants' alleged conduct was the proximate cause of their injuries.

With respect to the remaining Plaintiffs, the Court finds that these Plaintiffs' have provided sufficient evidence in support of their duty of fair representation claim to withstand summary judgment.  See Nicini, 212 F.3d at 806.  Drawing all reasonable inferences in Plaintiffs' favor, a reasonable jury could find that they relied on Defendants' alleged misrepresentations and they suffered injuries as a result.

## II.    CONCLUSION

Because Plaintiffs' claim for breach of the duty of fair representation is based on these alleged false statements made in bad faith, the Court finds that Plaintiffs' duty of fair representation claim is not preempted by the NLRA.  Consequently, this Court has subject matter jurisdiction to hear Plaintiffs' case.

Additionally, the Court finds that the statute of limitations period did not begin to run until February of 2004.  With respect to those Plaintiffs who filed this case in May of 2004, their claims are not barred by the six-month statute of limitations period.  With respect to those Plaintiffs who were added to the Complaint in December of 2005, their claims are barred by the statute of limitations.[17]

Finally, the Court finds that there is a genuine issue of material fact as to whether Defendants' alleged misrepresentations were made in bad faith. Plaintiffs' who were permanently replaced after the strike have provided sufficient evidence of their reliance and resulting injury to withstand summary judgment.  However, those fifteen Plaintiffs' whose job positions were eliminated have not provided sufficient evidence to demonstrate that Defendants'

---

[17] These Plaintiffs are Egenio Acosta, Edwin Claxton, Mary LeTang, Giselle Lopez, and Aisha Williams.

alleged conduct was the proximate cause of their injury. Therefore, summary judgment is granted in Defendants' favor as to these fifteen Plaintiffs.[18]

**ENTERED this 7th day of October, 2009.**

_____/s/_____
**HONORABLE RAYMOND L. FINCH**
**SENIOR U.S. DISTRICT JUDGE**

---

[18] These plaintiffs are Eugenio Acosta, Louis E. Brown, Rawle Caines, Nilda Cruz, Jose Felix, Hilarie Henry, Edilia Lawrence, Angel Parilla, Herman Peterson, Justino S. Ramos, Harvel Samuel, Angela Santos, Jaslyn Scatliffe, Arnold Simmonds, and Andres St. Kitts.